UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICHARD L. FLYNN,                    )
                                     )
        Plaintiff,                   )
                                     )
    vs.                              )         Case No. 4:09CV1387 CDP
                                     )
AT&T YELLOW PAGES,                   )
                                     )
        Defendant.                   )

## MEMORANDUM AND ORDER

Plaintiff Richard Flynn worked as an artist for defendant Southwestern Bell

Yellow Pages, Inc. (improperly named as AT&T Yellow Pages) for thirteen years

before he was terminated on October 9, 2007 for violating several Southwestern

Bell policies. A month-long investigation had revealed that Flynn used his work

computer to create images and store files for comic books he created and later

sold; to download and store hundreds of files of non-work-related material,

including music files and movie trailers; and to surf the internet for several hours

during work time. When confronted with the results of this investigation, Flynn

admitted he had used his computer for personal activities, and Southwestern Bell

terminated his employment.

Flynn, who is African-American and fifty-five years old, believed this

termination was motivated by unlawful discrimination. He filed this lawsuit in

August of 2009, contending Southwestern Bell's termination amounts to unlawful racial and age discrimination in violation of federal and Missouri law. He also asserts Southwestern Bell discriminated against him during his employment by failing to promote him, by retaliating against him for complaining about discrimination at Southwestern Bell, and by permitting a discriminatory and hostile work environment. Southwestern Bell now moves for summary judgment on all claims. Because the undisputed evidence reveals that Southwestern Bell had a legitimate, non-discriminatory reason to terminate Flynn, and that no similarly situated, younger, and Caucasian employee was treated differently, I will enter summary judgment in Southwestern Bell's favor.

## Background and Undisputed Facts

In 1994, plaintiff Richard Flynn began working as an artist for defendant Southwestern Bell Yellow Pages, Inc., in its Publishing and Design Services Group. Flynn has a Bachelor of Fine Arts Degree with a Major in Graphic Communication and Illustration from Washington University in St. Louis, and his duties as an artist for Southwestern Bell included creating images for customers' advertisements. While Flynn was employed by Southwestern Bell, he frequently expressed interest in being promoted to his managers. However, he was never promoted during his employment. Indeed, in November of 2000, Julie Voss was promoted to be Flynn's immediate supervisor, despite Flynn's expressed interest

in her position.  It is undisputed that Flynn and Voss did not get along well while she was his supervisor; Voss displayed a negative attitude toward Flynn and his suggestions, and occasionally yelled at him.  Although Flynn reported Voss's activities to Kevin Taylor, the Director of Publishing and Design Services, Voss was not disciplined.  Additionally, during the time Voss was Flynn's supervisor, Flynn continued to express his interest in a promotion to her, but she never recommended him, or any other employee she supervised, for a promotion. Because Southwestern Bell requires employees to receive a recommendation from their supervisors before they can be promoted, Flynn was never promoted. Instead, Cheryl Loehr was promoted to a management position in June of 2007 after her supervisor, John McKee, recommended her for a promotion.

Southwestern Bell requires its employees to agree each year to its Code of Business Conduct.  This Code prohibits employees from using Southwestern Bell's "assets and resources" to support unauthorized outside activities, including other employment or self-employment.  It also states that:

> Access to the Internet and the corporate e-mail is primarily for business use.  While limited, occasional personal use is not prohibited, abuse or misuse of these resources is inappropriate, and could result in disciplinary action up to and including dismissal.

Finally, the Code warns that any employee's failure to meet the Code's standards and policies "can lead to disciplinary action, up to and including dismissal . . . ." Flynn agreed to the terms of this Code each year he was employed.

In 2007, an employee reported Flynn's unauthorized use of his work computer to her supervisors and union representative, alleging that Flynn was spending large amount of work time on his company computer creating personal artwork, including images for his comic books, and engaging in other non-work-related activities. These allegations were reported to Kevin Taylor, who initiated a review of Flynn's activities through Southwestern Bell's Asset Protection department. Patrick Albright, the Asset Protection manager, began his investigation by remotely connecting to Flynn's computer and briefly viewing Flynn's computer activities. This brief review revealed that Flynn was creating his own comic book characters using company software and saving them on his computer. Albright also discovered that Flynn had saved numerous graphic cartoon images on his hard drive and was currently surfing the internet. Based upon these discoveries, Albright began a thirty-day review of Flynn's computer activities by periodically remotely accessing Flynn's computer and viewing his computer contents and activities. This investigation revealed that Flynn had downloaded and stored over 200 music files on his work computer, as well as hundreds of files of superhero and cartoon graphic images. Additionally, Flynn had stored the front and back cover pages of his comic book, with a price listing of $5.99. Albright also found that Flynn had downloaded and saved several video

clips from you.tube.com and other internet sites, and had spend around two to three hours surfing the internet on one day.

Albright reported the results of his investigation to Taylor, informing Taylor that Flynn's misuse of his company computer was the "worst he had ever seen." Albright then interviewed Flynn in the presence of Taylor and Flynn's union representative. Faced with the results of Albright's investigation, Flynn admitted to downloading and storing hundreds of files of non-work-related material and to working on his comic book on his company computer. He also admitted that this behavior violated Southwestern Bell's policies. Taylor terminated Flynn's employment on October 9, 2007.

After his termination,[1] Flynn filed charges of discrimination in December of 2007 with the Equal Employment Opportunity Commission, St. Louis Office, and with the Missouri Commission on Human Rights, alleging discrimination based on race, retaliation, and age. After receiving his right-to-sue letters, he filed this action in Missouri state court in August of 2009, and Southwestern Bell removed it to this Court. Flynn later amended his complaint to allege that Southwestern Bell's termination, failure to promote, retaliation, and hostile work environment constituted unlawful racial and age discrimination, in violation of Title VII of the

---

[1]Flynn was later reinstated to his position after his Union filed a successful grievance on his behalf challenging whether there was just cause under the parties' Collective Bargaining Agreement for Flynn's termination. The arbitrator's decision, however, is not probative of any material issue in this unlawful discrimination case.

Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981;

the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*;

and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. § 213.010 *et seq.*

Southwestern Bell now moves for summary judgment on all claims.

## **Discussion**

The standards for summary judgment are well settled.  In determining

whether summary judgment should issue, I must view the facts and inferences

from the facts in the light most favorable to the nonmoving party, here Flynn.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As the moving party, Southwestern Bell has the burden to establish both the

absence of a genuine issue of material fact, and that it is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  If

Southwestern Bell meets this burden, Flynn may not rest on the allegations in its

pleadings but by affidavit or other evidence must set forth specific facts showing

that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).  "[A] complete

failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

As outlined above, Flynn alleges Southwestern Bell discriminated against

him by terminating him, failing to promote him, retaliating against him, and

permitting a hostile work environment, in violation of Title VII, 42 U.S.C. § 1981, the ADEA, and the MHRC.  Title VII, § 1981, and the MHRA prohibit employers from discriminating against employees with respect to any condition of employment because of race, while the ADEA prohibits employers from discriminating against employers because of their age.  *See* 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 1981; Mo. Stat. Ann. § 213.055; 29 U.S.C. § 622; *see also St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (section 1981 prohibits discrimination against persons because of their "ancestry or ethnic characteristics").

When, as here, a plaintiff brings claims under these statutes but has no direct evidence of discrimination, his claims are analyzed using the burden-shifting framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2]  *See, e.g., Johnson v. AT&T Corp.*, 422 F.3d 756, 761 (8th Cir. 2005) (Title VII, § 1981 claims, and MHRA claims); *Calder v. TCI Cablevision of*

---

[2]In his brief in opposition to Southwestern Bell's motion, Flynn cites an Eighth Circuit decision for the proposition that the *McDonnell Douglas* burden-shifting framework does not apply to this case.  I disagree.  Flynn is correct that the Eighth Circuit noted in *Lams v. General Waterworks Corp.*, 766 F.2d 386 (8th Cir. 1985) that "the four-part *McDonnell-Douglas* formula is of little use in deciding this case."  *Id.* at 391.  I conclude, however, that the fact pattern in this case is not so different from the typical discrimination case that I must refrain from applying *McDonnell-Douglas*.  Indeed the evidence Flynn purports to rely on and the arguments he makes – that similarly situated, Caucasian employees were treated more favorably – are the typical evidence and arguments relied on by plaintiffs when attempting to satisfy the *McDonnell Douglas* burden-shifting framework.  *See, e.g., Rodgers*, 417 F.3d 845, 853-55 (8th Cir. 2005) (plaintiff attempted to show pretext by presenting evidence that Caucasian employee was not terminated after violating the same company policy that plaintiff was terminated for violating).

*Mo., Inc.*, 298 F.3d 723, 728-29 (8th Cir. 2002) (ADEA claim).  Under this familiar framework, Flynn must first "present a prima facie case of intentional discrimination."  *See, e.g., Putnam v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003).  The burden then shifts to Southwestern Bell to articulate a legitimate, nondiscriminatory reason for its action.  *Id.*  If Southwestern Bell satisfies that minimal burden, Flynn must show by a preponderance of the evidence that Southwestern Bell's proffered reason is merely  pretext for unlawful discrimination.  *See, e.g, Tyler v. University of Ark. Bd. of Trs.*, No. 10-1251, 2011 WL 31515, at *4 (8th Cir. Jan. 6, 2011).

### A.    Termination

Flynn first contends Southwestern Bell discriminated against him on the basis of his race and age by terminating him.  After reviewing the undisputed evidence in the record, I conclude that I must grant summary judgment to Southwestern Bell on this claim.  Even if I assume Flynn presents a prima-facie case of discrimination, Southwestern Bell has presented undisputed evidence that it had a legitimate and non-discriminatory reason to terminate Flynn, and Flynn presents no evidence that this proffered reason is mere pretext.

The burden on an employer to articulate a legitimate, nondiscriminatory reason for terminating an employee "is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence."  *Rodgers v. U.S. Bank,*

*N.A.*, 417 F.3d 845, 853 (8th Cir. 2005). Here, Southwestern Bell produces undisputed evidence that Flynn was terminated after a month-long investigation for violating Southwestern Bell's policies by excessively using his company computer to surf the internet during work time, to create images for his comic book, and to download hundreds of files of non-work-related material. Specifically, it presents evidence from its month-long investigation of Flynn, which revealed that: (1) Flynn frequently spent hours surfing the internet, and his computer had 31,359 hits from surfing primarily non-work-related sites during normal business hours; (2) Flynn had downloaded and stored over 200 music files as well as hundreds of other non-business related files pertaining to comic book characters and comic books; and (3) Flynn had used Southwestern Bell software to create graphics for his comic books, which he later sold. After concluding his investigation, the Asset Protection Manager, Patrick Albright, concluded that the amount of non-work-related activity Flynn engaged in on his work computer was the "worst he had ever seen."

Southwestern Bell also presents undisputed evidence that these actions violated its employee Code of Conduct. First, the Outside Employment and Business Activities policy provides that "[a]ny form of outside activity, including other employment or self-employment, must be separate from and not interfere with [the employee's] job . . . ." That policy also prohibits employees from using

Southwestern Bell's assets and resources "to support any unauthorized outside activity." Second, the Computer Systems policy provides that employees' access to the internet and company e-mail is "primarily for business use." Although "limited occasional personal use is not prohibited, abuse or misuse of these resources is inappropriate, and could result in disciplinary action up to and including dismissal." Indeed, the Code of Conduct provides that "[a]ny failure on the part of an individual to meet the standards embodied in this Code can lead to disciplinary action, up to and including dismissal . . . ."

Moreover, Flynn admitted at his interview and again in his deposition to having downloaded and stored 200 music files and hundreds of other, non-work related files pertaining to comic books on his work computer, and to having used his company computer to create images for his comic book, which he was selling at the time.[3] He also admitted this conduct violated Southwestern Bell's company policies.

---

[3]In an affidavit submitted in support of his opposition to summary judgment, Flynn avers that he never made any such admissions. This averment is contrary to his prior deposition testimony – that he had in fact admitted at this meeting that he had downloaded over 200 music files onto his company computer, and that he had sold around twenty comic books – and so does not create a genuine issue of material fact. *See Schiernbeck v. Davis*, 143 F.3d 434, 438 (8th Cir. 1998) (statements made in affidavit that were inconsistent with prior deposition testimony do not create a genuine issue of material, because "parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment."). In any event, Flynn does not dispute that he actually downloaded these music files along with the other hundreds of files of non-work-related material onto his company computer. Additionally, to the extent any other portion of Flynn's affidavit contradicts his deposition testimony, I have disregarded it and conclude it does not create a genuine issue of material fact.

In response to this undisputed evidence, Flynn seems to contend that his behavior did not violate Southwestern Bell's policies, because employee misuse of company computers was widespread. As Southwestern Bell points out, however, Flynn does not dispute that Taylor genuinely believed that Flynn's behavior violated Southwestern Bell's policies. *Cf. Johnson*, 422 F.3d at 762 (in determining whether unlawful discrimination motivated employee's termination, the "proper inquiry *is not* whether [employer] was factually correct" in concluding that employee violated company policies, but instead, is whether the employer "honestly believed" the employee violated them) (emphasis in original). Additionally, Flynn admitted at his deposition that his immediate supervisor informed him he could only use the internet for "brief and infrequent use." Given this undisputed evidence – Taylor's genuine belief that Flynn's behavior violated company policies, Flynn's admissions to downloading hundreds of files of non-work-related material, and the clear and unambiguous Code of Conduct policies prohibiting this behavior – I conclude that the undisputed evidence reveals that Southwestern Bell had a legitimate, nondiscriminatory reason to terminate Flynn. *See id.*; *Rodgers*, 417 F.3d at 853.

I also conclude that the evidence of other employee misuse fails as a matter of law to show that Southwestern Bell's proffered reason for terminating him was mere pretext for discrimination. Flynn can satisfy his burden of showing pretext

by pointing to evidence that Southwestern Bell treated him less favorably than similarly situated employees outside his protected group. *See, e.g., Riser v. Target Corp.*, 458 F.3d 817, 821 (8th Cir. 2006). However, the test for determining whether employees are similarly situated at the pretext stage is "rigorous," and Flynn must show that "he and the employees were similarly situated in all relevant respects." *See Rodgers*, 417 F.3d at 853; *see also Wheeler v. Aventis Pharms.*, 360 F.3d 853, 858 (8th Cir. 2004) (at the pretext stage, employees are only similarly situated if "they are involved in or accused of the same offense are disciplined in different ways."). Indeed, even if there is evidence that other employees were accused of similar misconduct as Flynn but were more leniently disciplined, this evidence is only probative of pretext if the other employees' conduct was comparably serious to Flynn's. *See id.*; *see also Wheeler*, 360 F.3d at 858 (employees' misconduct, which involved sexually offensive comments and gestures, was not the same as plaintiff's, which involved offensive sexual contact).

In opposition to Southwestern Bell's motion, Flynn does not dispute most of Southwestern Bell's Statements of Uncontroverted Material Facts, and so the unchallenged material facts are deemed admitted. *See* Local Rules for the United States District Court for the Eastern District of Missouri, Local Rule No. 4.01(E). Additionally, when Flynn does challenge a material fact, he often does not cite

evidence in the record to support this challenge, in violation of Local Rule No. 4.01(E).

However, even if I accept his arguments and evidence in opposition as true, they do not create a genuine issue of material fact. Flynn points to several fellow Southwestern Bell employees, who, he claims, engaged in similar conduct on their company computers without discipline. In particular, he points to evidence that other employees were allowed to use their work computers to: practice their sketches and artwork and save that work on their computers; surf the internet for several hours each day while researching ideas for advertisements; listen to music; and send occasional non-work-related emails, including emails offering for sale professional sports tickets and jewelry. Flynn also submits the affidavit of a former co-worker, James Collins,[4] who avers that another Southwestern Bell employee, Patrick Voss, used his computer extensively to run his own business

---

[4]Flynn failed to identify Collins as a witness in his responses to Southwestern Bell's first set of interrogatories, and failed to supplement his interrogatory answers anytime thereafter. Flynn did list Collins as a potential witness in his initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1), but he did not serve these on Southwestern Bell until October 8, 2010. However, this was eight months after the deadline for doing so as established in the Case Management Order, one month after the CMO's deadline for completing all discovery, and four days before the CMO's deadline for filing dispositive motions. Flynn provides no justification for this delayed disclosure, and his failure to identify Collins has prevented Southwestern Bell from deposing Collins or requesting discovery from him. Flynn is therefore not permitted to use Collins's affidavit in support of his opposition to summary judgment. *See* Fed. R. Civ. P. 37(c) ("If a Party fails to . . . identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless."). As discussed *infra*, however, this affidavit does not create a genuine issue of material fact even if admissible.

and work on his science fiction movies. Collins also avers that everyone in Publishing & Design, including managers, was aware of both Voss's activities and the other employees' frequent use of their computers for non-work-related matters. He also states that Southwestern Bell never enforced its policies against such use. Flynn makes similar averments in his own affidavit. However, neither Collins nor Flynn avers that they have personal knowledge that any Publishing & Design manager, including Taylor, knew about this activity and failed to discipline it.

This evidence is not sufficiently probative of pretext for Flynn's claim to withstand summary judgment. Even if I view all inferences in Flynn's favor, Flynn's fellow employees' conduct is not comparably serious a violation of Southwestern Bell's policies as Flynn's admitted behavior. *See Rodgers*, 417 F.3d at 853. Surfing the internet to get ideas for customers' advertisements, practicing sketches and artwork, and listening to music while working do not violate Southwestern Bell policies prohibiting excessive use of the internet for personal reasons and unauthorized use of company property. *Cf. Harvey v. County of Koochiching*, 527 F.3d 711, 721 (8th Cir. 2008) ("Masten's off-duty misconduct and other incidents dating to 1980 are not the same as Harvey's recent insubordination while on the job."). Even if these activities did violate Southwestern Bell's policies, there is no evidence in the record before me that Southwestern Bell employees engaged in these activities to the same extent as

Flynn, who admittedly downloaded hundreds of files of non-work-related material, including music, comic book images, and movie trailers; and whose thirty-day internet usage revealed 31,359 hits from surfing primarily non-work-related sites during normal business hours. *Cf. Rodgers*, 417 F.3d at 853-54 (even if two employees violated the same policy, "the frequency and seriousness of [plaintiff's] violations and the suspicious circumstances surrounding her violations set her apart.").

More significantly, there is no evidence that Taylor was aware of any of these activities that Collins says the other employees engaged in. Collins says the activities were widespread, and that Southwestern Bell had never enforced its policies before terminating Flynn, but Flynn presents no evidence that any manager was actually aware of the conduct at the time they terminated Flynn, or aware of conduct rising to the level of Flynn's at any time.[5] *See Harvey*, 527 F.3d at 721-22 (evidence that fellow employee committed similar misconduct as plaintiff did not support the inference of discrimination, when plaintiff failed to

---

[5]Flynn does submit evidence that Taylor held a meeting "sometime in 2008 or 2009" at which employees' misuse of the internet and personal email was discussed and employees were reminded of their duty to limit their non-work-related use of the internet. However, there is no evidence that these employees' misuse was similar to Flynn's, or that Taylor was aware of any individual employee misusing his work computer to the same extent as Flynn. Accordingly, this evidence fails to create a genuine issue of fact as to whether Southwestern Bell treated similarly situated employees differently.

produce evidence that supervisors were aware of the other employee's misconduct).

Flynn's other evidence similarly fails to show pretext. Although other employees' occasional use of their work email to send offers to sell professional sports tickets and jewelry might violate Southwestern Bell's policies, these activities are not as egregious of violations as Flynn's, for the same reasons as discussed above. *See id.* Finally, Collins's affidavit fails to create a question of fact. Although Collins avers that he observed Patrick Voss use his own work computer to run his personal business during work time, Collins does not aver that he observed Voss spending hours surfing the internet or downloading hundreds of non-work-related materials, as Flynn admits to having done. *See Hervey*, 527 F.3d at 721. Just as with the evidence of the other Southwestern Bell employees' activities, even if Voss's activities violated Southwestern Bell policies, there is no evidence that Voss violated as many policies as Flynn, or did so to the same extent as Flynn. Finally, although Collins avers that Publishing & Design managers – including, presumably, Taylor – were aware that Voss used his company computer to run his business he has no personal knowledge of any discussions between management and Voss, and there is thus no evidence that Voss was similarly situated to Flynn.

## B. Failure to Promote

Flynn also claims Southwestern Bell discriminated against him by failing to promote him and denying him promotion opportunities after he repeatedly expressed his desire for a promotion to management. Southwestern Bell moves for summary judgment on this claim, presenting uncontroverted evidence that all but one of Flynn's denial-of-promotion claims is barred by the applicable statutes of limitation. Southwestern Bell also contends that Flynn's one timely claim also fails, because there is no evidence that any similarly situated individual outside of Flynn's protected group received preferential treatment. I agree.

In his amended complaint, Flynn lists nine younger Caucasian employees who, he claims, were promoted instead of him over a period of eleven years. He also alleges that he filed simultaneous charges of discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights on December 6, 2007, alleging discrimination based on, *inter alia*, Southwestern Bell's failure to promote him. It is also undisputed that all but one of these employees were promoted from non-management to management positions more than five years before Flynn first filed his complaint, and more than three years before Flynn filed his charge of discrimination:

- Larry Lebeda was promoted on March 16, 1996.

- Garry Kramer was promoted on October 16, 1996.

- Zane Holtzclaw was promoted on April 4, 1997.

- Julie Voss was promoted on November 15, 2000.

- Kevin Brundage was promoted on August 1, 2002.

- Michelle Wells was promoted on August 1, 2003.

- David O'Brien was promoted on February 1, 2004.

- Cheryl Loehr was promoted on June 1, 2007.

Title VII and the ADEA both require plaintiffs to file charges of discrimination within 300 days after the "alleged unlawful employment practice occurred" before bringing their claims in court. *See* 42 U.S.C. § 2000e-5(e)(1); *see also, e.g., Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1327 (8th Cir. 1995) ("If a plaintiff fails to file a timely charge, the lawsuit is barred unless he or she can demonstrate that the limitations period is subject to equitable modification such as waiver, estoppel, or tolling."). Similarly, the MHRA requires plaintiffs to file their charges of discrimination within 180 days of the challenged employment practice. Mo. Stat. Ann. § 213.075; *accord Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). Finally, section 1981 claims are time-barred unless brought within four years of the challenged act. *Jackson v. Homechoice, Inc.*, 368 F.3d 997, 999 (8th Cir. 2004). Accordingly, the applicable statutes of limitations bar Flynn from asserting all claims arising from Southwestern Bell promoting these individuals except as to Cheryl Loehr.

Flynn claims that Southwestern Bell discriminated against him by promoting Loehr instead of him after his supervisor, Julie Voss, failed to recommend him for a promotion. A plaintiff can make a prima-facie case of discrimination based on an employer's failure to promote him if he presents evidence that: (1) he is a member of a protected group; (2) he was qualified for an available position; (3) he was rejected; and (4) employees similarly situated but not part of the protected group were promoted instead. *E.g., Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002). Here, however, it is undisputed that a Publishing and Design Services employee's manager must first recommend the employee before he can be considered for promotion from a management to a non-management position, and that Voss never recommend anyone for a promotion. Finally, it is undisputed that Loehr was promoted after receiving a recommendation from her supervisor, John McKee. In the face of this undisputed evidence, I must conclude that Flynn fails to establish a prima facie case of discrimination. There is simply no evidence that any similarly situated, younger, or Caucasian employee was treated differently than Flynn. *See id.*; *see also Taylor v. Georgia-Pac. LLC*, No. 06-CV-1079, 2008 WL 906527, at *6-7 (W.D. Ark. Mar. 31, 2008) (failure to promote claim failed as a matter of law when one employee promoted over plaintiff did not work in the same department or have the same supervisor as plaintiff and was therefore not similarly situated).

Flynn attempts to create a question of fact by presenting evidence that, he claims, shows Voss gave other employees more "opportunities for a promotion," although he admits that none of these employees was ever recommended for promotion. Accepting all inferences in Flynn's favor, I conclude this evidence fails to create a question of fact. To begin with, plaintiffs only have an actionable claim for discriminatory failure to promote if another employee outside their protective group was actually promoted. *See, e.g., Taylor*, 2008 WL 906527, at *6 (plaintiff's gender discrimination claims failed when he adduced no evidence that any woman was promoted instead of him); *see also Lams v. General Waterworks Corp.*, 766 F.2d 386, 394 (8th Cir. 1985) (evidence of defendant's discriminatory failure to promote African-American plaintiffs included, *inter alia*, evidence that Caucasian employees were promoted instead of plaintiffs). Moreover, Flynn's reliance on *Lams* as support for his argument that Southwestern Bell's failure to provide him promotion opportunities is misplaced. The plaintiffs in *Lams* submitted evidence that defendant: (1) systematically failed to consider them for promotions despite their being qualified, because of defendant's belief that African-Americans would not want managerial positions; (2) failed to advertise job openings in plaintiffs' place of work; (3) maintained a segregated work force; and (4) promoted Caucasian candidates over African-Americans. *See Lams*, 766 F.2d at 393-94. Here, Flynn only submits evidence that his supervisor instructed

him to do different things, including creating power point presentations, than she instructed other employees to do when they inquired about promotions. The evidence before me fails to rise to the same level of systematic discrimination and failure to promote as that *Lams*. Flynn has failed, as a matter of law, to establish a prima facie case of discrimination based on Southwestern Bell's failure to promote him.

### C.    Harassment

Flynn next claims that he suffered from unlawful harassment because of his age and race while employed at Southwestern Bell. He presents evidence that his supervisor, Julie Voss, yelled at him and treated him in a "antagonistic, confrontational, abusive, and negative" way. Southwestern Bell responds that none of this behavior gives rise to a harassment claim. I agree.

Within the Eighth Circuit, a plaintiff can prevail on a discriminatory harassment or hostile-work-environment claim if he establishes: (1) he was a member of a protected group; (2) he was subjected to unwelcome and discriminatory harassment; (3) the harassment was because of his membership in the protected group; (4) the harassment affected a term, condition, or privilege of his employment by creating a hostile work environment; and (5) the employer knew or should have known about the harassment but failed to take proper remedial action. *See, e.g., Cross v. Prairie Meadows Racetrack & Casino, Inc.*,

615 F.3d 977, 981 (8th Cir. 2010); *Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 652 (8th Cir. 2003). Harassment affects a term, condition, or privilege of employment when it is severe or pervasive. *E.g., Singletary v. Missouri Dep't of Corrs.*, 423 F.3d 886, 892 (8th Cir. 2005). In determining whether the harassment is severe, a court must consider it "as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." *Howard v. Bunrs Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998). A workplace has a hostile environment when it is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 991 (8th Cir. 2003) (internal quotation marks and citations omitted); *see also Singletary*, 423 F.3d at 892-93 (court must consider "all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance.").

Here, Flynn submits evidence that Voss yelled at him and was negative with him more than with other employees, and that he complained to another manager about her behavior. For instance, at his deposition, Flynn testified that Voss would scream at him if he pointed out items in the company's advertisements to

her.  However, there is no evidence suggesting that any of Voss's actions were motivated by discriminatory animus.  Flynn never testified, nor is there any evidence suggesting, that Voss ever used racial epithets around him.   Indeed, Flynn himself testified that he believed Voss mistreated him because she was intimidated by his education.  He also testified that he believed that Voss's treatment was motivated by hostility toward his race, but there is no objective evidence in the record supporting that conclusion.  *Compare Singletary*, 423 F.3d at (undisputed evidence that defendant's employees used racial epithets when talking to him); *cf. Elmahdi*, 339 F.3d at 653 (even with evidence that plaintiff's co-workers occasionally called him offensive names, like "boy" and "black boy," plaintiff's claim failed as a matter of law, because the statements did not "constitute a steady barrage of opprobrious racial comments sufficient to support a § 1981 hostile work claim.") (internal citation and quotation marks omitted).

Moreover, even if I construe Voss's treatment of Flynn as motivated by discriminatory animus, he has presented no evidence that the treatment was severe or pervasive enough to state a claim.  There is no evidence that Voss's treatment of Flynn was severe or physically threatening or humiliating, or that it unreasonably interfered with his work performance.  *See Singletary*, 423 F.3d at 892-93.  Because Flynn has presented no evidence suggesting Voss subjected him

to discriminatory harassment, or that any such harassment was severe or pervasive, I must grant summary judgment to Southwestern Bell on this claim.

### D.    Retaliation

In his complaint, Flynn also alleged that Southwestern Bell terminated him, failed to promote him, and harassed him in retaliation for his complaints about unlawful discrimination.  However, he presents no evidence in support of this claim, and appears to have withdrawn it, as he makes no arguments in favor of it in his brief in opposition to Southwestern Bell's motion.  Accordingly, I will grant summary judgment to Southwestern Bell on this claim as well.

## Conclusion

In conclusion, Southwestern Bell has presented undisputed evidence that it had a legitimate, non-discriminatory reason to terminate Flynn.  Additionally, Flynn fails to present evidence that any similarly situated Caucasian or younger employee violated the same policies to the same extent as he did, so he fails as a matter of law to show that these non-discriminatory reasons were pretext for unlawful discrimination. It is also undisputed that Flynn's supervisor failed to recommend anyone for promotion – whether Caucasian or African-American, younger or older, and so Flynn's failure-to-promote claim fails as well.  The evidence of Voss's treatment of Flynn reveals that it was neither motivated by discriminatory animus, nor severe or pervasive enough to amount to an actionable

hostile-work-environment claim. Finally, his failure to support his retaliation claim with any evidence is fatal to that claim as well.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#37] is granted, and plaintiff's first amended complaint is dismissed with prejudice.

A separate Judgment will be entered this same day in accordance with this Memorandum and Opinion.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 21st day of January, 2011.